Opinion of the Court—Lord, J.

[Filed May 21, 1885.]

## STATE OF OREGON v. ABE LAWRENCE.

GRAND JURY—CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTE.—The Constitution, article 7, section 18, having provided that the grand jury shall be chosen from the jurors in attendance at the court, an act which provides that the clerk shall draw from the body of jurors a grand jury several days prior to the term of court is in conflict therewith and void.

ID.—INDICTMENT.—An indictment found by a grand jury so drawn is invalid, and a conviction thereon must be reversed.

MULTNOMAH COUNTY.   Defendant appeals.   Reversed.

*James K. Kelly*, for Appellant.

*John M. Gearin, District Attorney*, for Respondent.

LORD, J.—By the late act of the legislature it is provided, in substance, that the sheriff and clerk shall draw from the body of jurors a grand jury several days prior to the term of court.

The question presented is, does the act conflict with section 18 of article vii. of the Constitution, which provides that "the legislative assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors, and out of the whole number in attendance at court seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment; but the legislative assembly may modify or abolish grand juries?"   As the act necessarily selects the grand jury, not from the "jurors in attendance at the court," it is admitted to be in conflict with the provision cited, unless the power vested in the legislature by the latter clause—"may modify or abolish grand juries"—gives validity to the act. What is meant by the words "may modify .... grand juries?" In a general sense, to modify means to change or vary, to qualify or reduce; and unless there is something in the context, or special usage, the words are to be taken in their plain, ordinary, and popular sense.   A power given to modify or abolish implies the existence of the subject-matter to be modified or abolished.   When exercised to modify, it does not destroy identity, but effects some change or qualification in form or qualities, powers or duties, purposes or objects, of the subject-

matter to be modified, without touching the mode of creation. The word implies no power to create or to bring into existence, but only the power to change or vary in some particular an already created or legally existing thing. For the existence of a grand jury the Constitution has provided; it must be chosen from the whole number of jurors in attendance at the court. It is this body, as thus constituted, the legislature may modify or abolish. If the power is not put forth to abolish, it may be exercised to modify it; but this cannot include the power to create or destroy it. The fact that it may be abolished or modified proceeds from the assumption that its existence is already provided for, and furnishes the subject-matter upon which the legislative act is to operate.

It is grand juries to which the word "modify" in the section relates, and to which the power it embodies must be applied, and not to the mode of selecting grand jurors, for which the Constitution has provided; or, perhaps, to the grand-jury system, and not to the mode of selecting individual grand jurors who compose the grand jury. These or this the legislature may modify in various ways, by limiting or regulating their powers, duties, qualifications, etc. The Constitution, then, having prescribed that the grand jury shall be chosen from the jurors in attendance at the court, it would seem to be exclusive, and limit the legislative power in this regard. "Our act of assembly," said Gibson, C. J., "requires talesmen to be taken from the bystanders; and in this respect it is more explicit than the English statute, which directs them to be taken from *the persons attending at the assizes.* Yet the construction of one and the other has never been so liberal as to include any but those actually present." (*Simon* v. *Gratz,* 2 Pen. & W. 417.)

In *Randall* v. *State,* 16 Wis. 340, the court says : "It would be absurd to say that a member was in attendance upon the general assembly when it was not convened." The act of the legislature prescribing that the grand jury shall be drawn from jurors other than those in attendance at court is in conflict with the provision of the Constitution cited, and must yield to the paramount law. It is therefore void.

The next inquiry is whether the effect of this is to entitle the defendant to have the indictment quashed, and the judgment of conviction reversed. Although this question was not argued, it was evidently assumed as a consequence of the declared invalidity of the law. The press of other business, and the necessity of an early decision of this matter on account of the public exigency, has denied us that opportunity for an investigation and consideration of this phase of the question which is desirable and necessary for a satisfactory solution. The proceeding here is direct and not collateral. The defendant was indicted by a grand jury chosen under a void law, to which he regularly excepted, and, as a consequence thereof, claims that the accusatory paper found against him by such a body of men is not an indictment, and that the judgment of conviction founded upon it cannot be sustained. In *People* v. *Petrea*, 92 N. Y. 135, the defendant was indicted by a grand jury selected under a void law. At the trial he filed a plea alleging the act to be unconstitutional, on the ground that it was a local act. The court declared the act to be void, but held that the objection to it was properly overruled in the court below, as it involved no constitutional right. The court say :—

"We are of the opinion that no constitutional right of the defendant was invaded by holding him to answer to the indictment. The grand jury, although not selected in pursuance of a valid law, were selected under color of law, and semblance of legal authority. The defendant, in fact, enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the General Statutes. Nothing could well be more unsubstantial than the alleged right asserted by the defendant, under the circumstances of the case. He was entitled to have an indictment found by a grand jury before being put on his trial. An indictment was found by a body drawn, summoned, and sworn as a grand jury before a competent court, and composed of good and lawful men. This, we think, fulfilled the constitutional guaranty. The jury which found the indictment was a *de facto* jury, selected and organized under the forms of law. The defect in its Constitution, owing

to the invalidity of the law of 1881, affected no substantial right of the defendant. We confine our decision on this point to the case presented by the record, and hold that an indictment found by a jury of good and lawful men, selected and drawn as a grand jury under color of law, and recognized by the court, and sworn as a grand jury, is a good indictment by a grand jury, within the sense of the Constitution, although the law under which the selection was made is void."

But it is to be noted that the Constitution of New York does not, as the Constitution of Oregon, require the grand jury to be chosen from the jurors in attendance at the court, but the whole matter of selecting a grand jury is left almost entirely to the discretion of the legislature, without limitation or reservation. The court say: "The Constitution does not define the mode of selection." With us, so long as the grand-jury system is permitted to remain — not abolished — it is the constitutional right of a defendant accused of a crime to demand that the indictment shall be found by a grand jury selected only as provided in the Constitution. The difference is that here there is a want of power in the legislature to do what was proposed by the act; but there, it was not a want of power to do what was proposed by the act only to make it constitutional; it must be done by a general and not by a private or local law. It was because the act did not invade any constitutional right or privilege of the defendant in the selection of grand juries in that case, to which the result is attributable; it is because it does invade such right in this case that the decision is inapplicable.

There are, however, numerous authorities to the effect that when a grand jury is not selected as required by law, or a selection is made of such persons as are not qualified to act as grand jurors, an indictment found by them is null and void, and should be quashed, and the prisoner indicted *de novo*. (*Finley* v. *State*, 61 Ala. 201; *Couch* v. *State*, 63 Ala. 163; *Clare* v. *State*, 30 Md. 165; *Wilburn* v. *State*, 21 Ark. 201; *Whitehead* v. *Commonw.* 19 Gratt. 640; *McQuillen* v. *State*, 8 Smedes & M. 587; *State* v. *Williams*, 5 Port. 130; *Dutell* v. *State*, 4 Greene, 125; *Doyle* v. *State*, 17 Ohio, 222; *Fitzgerald* v. *State*, 4 Wis. 398.)

In *State* v. *Symonds*, 36 Me. 132, the court say:—

"These persons were sworn and charged as grand jurors, and added to the panel, and acted in finding this bill.    But as their selection for this purpose was not in conformity to the laws of this State, they constituted no part of a legal grand jury.    Consequently the indictment could not have been found by at least twelve lawful jurors, and is void and erroneous at common law; and in the spirit and language of an act of Parliament (11 Hen. N. C. 9), should be 'revoked and forever holden for naught.'" (2 Hale P. C. 155; 4 Blackst. Com. 302; *Commonw.* v. *Smith*, 9 Mass. 107; *Low's Case*, 4 Me. 439.)

Upon the whole, it is our judgment that the accusatory paper was not an indictment; that it proceeded from and was the act of a body of men selected as a grand jury in violation of the Constitution.    It follows, therefore, that the judgment of conviction must be reversed, and the cause be remanded for such further proceedings in conformity with this opinion and the law as may be required.