Argued and submitted October 29, 1993, peremptory writ to issue January 27, 1994

STATE ex rel Michael D. SCHRUNK,
District Attorney for Multnomah County,
and Scott Upham, District Attorney
for Washington County,
*Plaintiffs-Relators,*

*v.*

Alan C. BONEBRAKE,
Judge of the Circuit Court of the
State of Oregon for Washington County,
*Defendant.*

(SC S40249)

865 P2d 1289

Virginia L. Linder, Solicitor General, Salem, argued the cause and filed the briefs for plaintiffs-relators. With her on the briefs was Theodore R. Kulongoski, Attorney General, Salem.

Thomas Michael Ryan, Metropolitan Public Defenders' Office, Portland, argued the cause and filed the brief for defendant.

Before Carson, Chief Justice, and Peterson,* Gillette, Van Hoomissen, Unis, and Graber, Justices.

CARSON, C. J.

---

* Peterson, J., retired on December 31, 1993.

## CARSON, C. J.

The issue in this mandamus proceeding is whether, after a verdict was reached in a trial to the court, but before sentencing and judgment, the trial court erred in dismissing indictments issued by two separate grand juries on the ground that the grand juries consisted of fewer than seven members.

In April 1992, Sue Lane Gifford was indicted in Multnomah County in a 20-count indictment, charging her with unlawfully obtaining public assistance, unsworn falsification, and theft in the first degree. The Multnomah County grand jury that indicted Gifford was comprised of six members, one of its seven original members having been excused for good cause. In June 1992, Gifford was indicted in Washington County for kidnapping in the second degree by a grand jury comprised of seven members. In August 1992, Gifford was indicted for perjury by a Washington County grand jury comprised of six members, one of its seven original members having been excused for good cause. In September 1992, venue for the Multnomah County case was changed to Washington County, and the Multnomah County and Washington County cases were consolidated for trial in Washington County.

Gifford waived her right to a jury trial, and trial was held before defendant judge beginning in November 1992. In December 1992, the trial court found Gifford guilty of all the charged crimes.

In January 1993, after the court reached its verdicts,[1] but before it sentenced Gifford or entered judgment, Gifford filed motions to "quash" the indictments[2] and the

---

[1] In January 1993, defendant judge issued an order entitled "Findings and Order from Court Trial." For the purposes of this case, findings of fact issued by the trial judge after a trial to the court have the same effect as a verdict in a jury trial. *Cf.* ORCP 62 F ("In an action tried without a jury * * * the findings of the court upon the facts shall have the same force and effect, and be equally conclusive, as the verdict of a jury."). Thus, we refer to the findings of guilt issued by defendant judge as "verdicts" throughout this opinion.

[2] Defendant judge correctly treated Gifford's motions as motions to set aside the indictments, and so shall we. *See State v. Pratt*, 316 Or 561, 567-68, 853 P2d 827, *cert den*, ___ US ___, 114 S Ct 452, 126 L Ed 2d 384 (1993) (ORS 135.510(1)(a) applied to challenge based on constitutionally inadequate number of grand jurors).

scheduled sentencing and to dismiss the case on the ground that the Oregon Court of Appeals had held in *Goodwin v. State of Oregon*, 116 Or App 279, 840 P2d 1372 (1992), *w/drawn & rev'd*, 125 Or App 359, 363, 866 P2d 466 (1993), that a grand jury must consist of at least seven grand jurors to return a true bill.[3] In May 1993, defendant judge granted Gifford's motions and dismissed all the indictments, except the Washington County kidnapping indictment, on the ground that the indictments were returned by grand juries consisting of fewer than seven members.[4] The orders dismissing the indictments stated that the dismissals were without prejudice and that they were based on *Goodwin v. State of Oregon*.

The state then sought a writ of mandamus ordering defendant judge to vacate the orders of dismissal and to sentence Gifford on all the convictions. In June 1993, this court issued an alternative writ of mandamus. This court then asked the parties to address these three questions:

"(1)   Was the defendant's challenge to the grand jury panels timely? *State v. Pratt*, 316 Or 561, [853] P2d [827] (1993).

---

[3] The Court of Appeals held that, "[b]ecause only six grand jurors heard the evidence in petitioner's case, he was entitled to dismissal of the indictment." *Goodwin v. State of Oregon*, 116 Or App 279, 284, 840 P2d 1372 (1992), *w/drawn & rev'd*, 125 Or App 359, 365, 866 P2d 466 (1993). The Court of Appeals further held that Article VII (amended), section 5(2), which requires that "[a] grand jury shall consist of seven jurors," mandates that "seven grand jurors hear and consider all of the evidence presented before a valid indictment can be found." *Id.* at 283.

On reconsideration, the Court of Appeals withdrew its original opinion and issued a new opinion, holding that, pursuant to *State v. Pratt, supra,* n 2, any constitutional error in the composition of the grand jury "did not render the judgment void or deprive the trial court of jurisdiction." *Goodwin v. State of Oregon*, 125 Or App 359, 363, 866 P2d 466 (1993), *w/drawing & reversing* 116 Or App 279, 840 P2d 1372 (1992). Therefore, the Court of Appeals held that, even assuming the indictment in *Goodwin* violated Article VII (amended), section 5(2), the "violation does not result in a void conviction, and does not constitute a basis for post-conviction relief." *Id.* Nonetheless, the Court of Appeals held in a different consolidated reconsideration opinion, decided the same day as the new opinion in *Goodwin*: "We decline to reconsider the merits of the constitutional argument and expressly adopt and incorporate in this opinion our analysis of that issue that was included in the original *Goodwin* decision. 116 Or App at 281-84." *State v. Conger*, 125 Or App 355, 357, 866 P2d 469 (1993), *on recon from* 120 Or App 220, 851 P2d 636 (1993) and *State v. Daugherty*, 116 Or App 665, 841 P2d 704 (1992). (Citation in original.) Thus, the Court of Appeals maintains its position that Article VII (amended), section 5(2), requires that an indictment be returned by seven grand jurors.

[4] Judgment was entered on the remaining kidnapping conviction. That conviction is not at issue in this proceeding.

"(2) If the challenge to the grand jury panels was not timely, does the trial court nonetheless have authority to consider and rule upon an untimely challenge? Please answer this question regardless of your position in response to question (1).

"(3) Were the grand jury panels, which returned the indictments that were dismissed without prejudice by the trial court, lawfully constituted? Please answer this question regardless of your response to questions (1) and (2)."

For the reasons set forth below, we conclude that Gifford's motions to set aside the indictments were untimely and that defendant judge did not have authority to consider her motions. Therefore, a peremptory writ shall issue directing defendant judge to vacate his orders setting aside the indictments and further directing him to sentence Gifford and to enter judgment in accordance with the verdicts reached in the trial before the court.

In *State v. Pratt*, 316 Or 561, 567-68, 853 P2d 827, *cert den*, ___ US ___, 114 S Ct 452, 126 L Ed 2d 384 (1993), this court held that a challenge to an indictment based on a claim that a grand jury consisting of less than seven members is improper under Article VII (amended), section 5(2), of the Oregon Constitution[5] was so similar to the statutory bases for challenging an indictment under ORS 135.510(1)(a)[6] that ORS 135.520 (set forth *infra*) determined the timing for the constitutional as well as the statutory challenges.

ORS 135.520 provides:

"A motion to set aside the indictment or dismiss the accusatory instrument shall be made and heard at the time of the arraignment or within 10 days thereafter, unless for good cause the court allows additional time. If not so made, the

---

[5] Article VII (amended), section 5(2), of the Oregon Constitution provides:

"A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment."

[6] ORS 135.510(1) provides, in part:

"The indictment shall be set aside by the court upon the motion of the defendant * * *:

"(a) When it is not found, indorsed and presented as prescribed in ORS 132.360, 132.400 to 132.430 and 132.580."

defendant is precluded from afterwards taking the objections to the indictment or accusatory instrument."

Under the holding in *Pratt*, Gifford was required to make her motions to set aside the indictments within the time limits established by ORS 135.520. This court further stated in *Pratt* that, under ORS 135.520, "either a motion to set aside an indictment or a demurrer must be filed *before trial*." 316 Or at 567. (Emphasis added.) The defendant in *Pratt* raised the constitutional challenge to the indictment for the first time on appeal. *Id.* at 566-67. This court held that "[d]efendant's failure to make a timely motion to set aside the indictment precludes this court from considering the grand jury issue further." *Id.* at 568.

Defendant judge[7] asserts that Gifford's motions to set aside were timely because, for good cause, as provided in ORS 135.520, he allowed Gifford additional time to make the motions. Defendant judge asserts that he heard the state's timeliness argument before ruling on the motions and, by granting the motions, he implicitly allowed Gifford additional time for good cause.

■　　　Upon examination of ORS 135.520, however, we reject defendant judge's analysis. We reaffirm our position in *Pratt* and hold that, although a trial judge may allow a motion to set aside an indictment to be heard more than 10 days after arraignment upon a showing of good cause, the trial judge cannot extend the time to hear the motion beyond commencement of trial.

■　　　It is the task of this court to determine what the legislature intended when it enacted ORS 135.520. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (setting forth method of ascertaining legislative intent). To determine legislative intent, we first examine the text and context of the statute. *Id.* at 610-11.

---

[7] In these proceedings, defendant judge is represented by the Public Defender pursuant to ORS 34.130(4), which provides, in part, that "[w]ith the consent of [defendant judge] * * * the attorney for an adverse party may appear on behalf of [defendant judge]." Gifford is the adverse party in these proceedings. ORS 34.105(1) (" 'Adverse party' means a beneficially interested party to a judicial * * * proceeding from which a mandamus proceeding arises, whose interests are adverse to the relator.").

■ The text of ORS 135.520 does not make clear whether there are any limits upon a judge's ability to allow a criminal defendant more time within which to challenge an indictment. The context of ORS 135.520, however, is informative. The context of a statute includes other provisions of the same statute and of related statutes. *See PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611 ("[A]t the first level of analysis, the court considers the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes.").

ORS 138.060 defines the scope of the state's right to appeal in criminal cases. That statute explicitly deals with appeals of court orders dismissing or setting aside indictments and, thus, is part of the context of ORS 135.520. ORS 138.060(1) provides that the state may appeal to the Court of Appeals from "[a]n order *made prior to trial* dismissing or setting aside the accusatory instrument." (Emphasis added.) ORS 138.060(2) allows the state to appeal from "[a]n order arresting the judgment."

This court has held that "the legislature * * * intended to correlate the appeal of these final orders with a defendant's right against double jeopardy." *State v. Hattersley*, 294 Or 592, 597, 660 P2d 674 (1983). ORS 138.060(1) and (2) illustrate that the legislature intended to allow the state to challenge a court order dismissing an indictment, both before trial and after trial,[8] and that the legislature intended for those challenges to be within the bounds established by the protection against former jeopardy.

For the state to have a right to appeal an order setting aside an indictment, the order must be entered before trial. After examining the structure of the statute establishing the state's right of appeal, it seems unlikely that the legislature intended to allow a defendant to move to set aside his or her indictment after trial begins, claiming "good cause" for the delay, thereby denying the state its right to appeal the order setting aside the indictment under ORS

---

[8] ORS 135.640, 136.500, and 135.630 (1) and (4) provide that motions in arrest of judgment may be made only on the ground that the grand jury had no authority to inquire into the crime or that the facts set forth in the indictment do not constitute an offense. No claim for relief has been made on either of those grounds here.

138.060.[9] ORS 138.060 suggests that the legislature conceived of two times at which a defendant could challenge an indictment — pre-trial and, in specialized circumstances, post-trial. In order to be consistent with the legislature's goal of allowing the state to appeal orders dismissing indictments to the fullest extent possible under the rules of former jeopardy, a motion challenging an indictment must be made either pre-trial, by a motion to set aside the indictment[10] or, if appropriate, post-trial, by a motion in arrest of judgment. The structure of ORS 138.060 suggests that a trial judge has no discretion to grant a motion to set aside an indictment after the commencement of trial.

■    Although the text and context of ORS 135.520 strongly suggest that the legislature intended that a motion to set aside an indictment must be made prior to trial, legislative intent still is not entirely clear. When the intent of the legislature is not clear from the text and context of a statute, we will "consider legislative history to inform the court's inquiry into legislative intent." *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611-12.

The provision of ORS 135.520 that allows a trial judge to hear a motion to set aside an indictment more than 10 days after arraignment upon a showing of good cause was added to the statute in 1973 as part of a comprehensive revision of the procedural provisions of the criminal code proposed by the Criminal Law Revision Commission. During a meeting of a subcommittee of the Criminal Law Revision Commission, Representative George F. Cole proposed an amendment to the first draft of ORS 135.520, inserting the 10-day and good-cause clauses in the bill. Representative Cole said that "he did not wish to preclude the defendant from the

---

[9] This court also has stated that it "endeavors to avoid interpreting a statute in a manner which will produce absurd results." *State v. Garcias,* 298 Or 152, 159, 690 P2d 497 (1984). It would be absurd for us to conclude that the legislature intended to allow defendants to make motions to set aside indictments after trial begins and thereby foreclose appellate review of those orders.

[10] Although this case does not involve a demurrer, under ORS 138.060(1), the state also may challenge an order sustaining a demurrer. *See e.g., State v. Parker,* 299 Or 534, 538-39, 704 P2d 1144 (1985) (allowing appeal under ORS 138.060(1) when order sustained a demurrer to one count of a three-count indictment). Again, the application of ORS 138.060(1) to a demurrer reflects the legislative assumption that a demurrer to an indictment must be made before the commencement of trial.

opportunity to move as so many things turn up *prior to trial* and after arraignment." Minutes, Criminal Law Revision Commission, Subcommittee No 1, August 22, 1972, p 17. (Emphasis added.)

When Representative Cole made the motion to insert the provision, he "proposed to insert the same 10 day and good cause conditions written into the former jeopardy section." *Id.* When Representative Cole earlier had proposed the corresponding timing clause for former jeopardy challenges, he had said that "the motion for dismissal on the basis of former jeopardy should be allowed at any time *prior to trial.*" *Id.* at p 4. (Emphasis added.) Representative Cole wanted to give criminal defendants leeway in challenging their indictments, but only up to the commencement of trial. As his statements indicate, Representative Cole did not intend for his proposed "good cause exception" to extend beyond the commencement of trial.

From the foregoing examination of the text, context, and legislative history of ORS 135.520, it is clear that the legislature intended that motions to set aside indictments be made *pre-trial.*

Defendant judge argues that, to the contrary, he had discretion to consider Gifford's motions to set aside the indictments after trial began, citing this court's holding in *State v. Wimber*, 315 Or 103, 843 P2d 424 (1992). In *Wimber*, the trial court, under ORS 135.610(1), permitted the defendant to file a demurrer just before trial and to "renew" the demurrer after a jury verdict was returned. 315 Or at 111.

The statute that establishes the time for bringing demurrers provides: "The demurrer shall be entered either at the time of the arraignment *or at such other time as may be allowed to the defendant for that purpose.*" ORS 135.610(1). (Emphasis added.) In *Wimber*, this court held:

"[T]he court indisputably allowed defendant to demur at the beginning of trial, and it indisputably allowed defendant to 'renew' the demurrer at the end of trial. In the circumstances, we find that the court allowed defendant to demur at a time other than at the arraignment and that the court did not abuse its discretion thereby. Accordingly, the demurrer was timely." 315 Or at 112.

Defendant judge argues that there is no qualitative difference between "other time" in ORS 135.610 (demurrer) and "additional time" in ORS 135.520 (motion to set aside indictment). Defendant judge reasons that his decision to rule after verdict on Gifford's motions to set aside the indictments was discretionary, that he acted within his discretion, and therefore, that, under the circumstances, mandamus is not appropriate. We disagree with defendant judge's reading of the law.

This case is not controlled by *Wimber* for two reasons. First, in *Wimber*, the parties did not raise the issue whether a demurrer must be made before trial. The focus of the analysis was on *"what conduct* by a trial court is sufficient to show that it 'allow[ed]' a defendant to demur at some 'other time.' " *State v. Wimber, supra*, 315 Or at 111 (citing ORS 135.610(1)). (Emphasis added.) (Brackets in original.) *Wimber* did not consider whether there were any statutory limitations on the timing of the motion. Rather, it considered only whether the trial court abused its discretion on the facts presented.[11] *Wimber*, therefore, did not address and does not answer the question presented in this case.

Secondly, the defendant in *Wimber* first demurred to the indictments *before trial.*[12] *Id.* at 106. Because the motion in *Wimber* was made in a timely manner, even though the trial court delayed its ruling, this court had no reason to consider or address what the consequences would have been if the motion had not been timely. Thus, *Wimber* is not controlling here.

For the foregoing reasons, Gifford's motions to set aside the indictments were untimely under ORS 135.520. The statute provides that, if the challenge is untimely, "the defendant is precluded from afterwards taking the objections

---

[11] Indeed, the court in *State v. Wimber* expressly noted that "[w]e do not wish to be understood as approving of the practice of raising demurrers at trial." 315 Or 103, 112 n 18, 843 P2d 424 (1992). In support, the court cited *State v. Montez*, 309 Or 564, 597, 789 P2d 1352 (1990), which stated that the proper time for an objection to an indictment was before trial and that an oral demurrer to an indictment made at the end of trial was untimely and was properly denied.

[12] The demurrer in *Wimber* was based on the defendant's contention that the offenses charged in the indictment took place outside the statute of limitations. *State v. Wimber, supra*, 315 Or at 106.

to the indictment or accusatory instrument." Gifford, therefore, was precluded from challenging the indictments, and defendant judge did not have authority to hear the motions to set aside after trial began. Defendant judge erred in granting the motions setting aside the indictments.[13]

■     In this case, a writ of mandamus is an appropriate remedy. ORS 34.110 provides that a writ of mandamus "shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." Defendant judge argues that mandamus is not appropriate, because the indictments were dismissed without prejudice, and the state easily could reindict Gifford. That argument is not well taken. Reindictment would give the state a remedy for the loss of the indictments, but it would not give the state a remedy for the convictions that it lost when the trial court granted the motions to set aside the indictments after the guilty verdicts were entered. *See State ex rel Hupp etc. Corp. v. Kanzler*, 129 Or 85, 97, 276 P 273 (1929) (mandamus permissible if relator is otherwise unable to obtain complete relief). The state, therefore, does not have an adequate remedy at law and, thus, mandamus is a permissible discretionary remedy.

It is ordered that a peremptory writ shall issue directing defendant judge to vacate his orders setting aside the indictments and further directing him to sentence Sue Lane Gifford and to enter judgment in due course upon the verdicts reached after the trial before the court.

---

[13] This court has not reached the issue of whether an indictment issued by a grand jury of less than seven members is valid under Article VII (amended), section 5(2), of the Oregon Constitution. *See State v. Pratt, supra*, 316 Or at 566-68 (constitutional question not reached because challenge was not timely).